UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KEVIN P. TILLEY, | |
| Plaintiff, | |
| v. | Civil Action No. 25-1972 (SLS) |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |

**MOTION TO DISMISS AND**
**MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................... i

Table of Authorities ........................................................................................................... ii

Introduction ......................................................................................................................... 1

Background ........................................................................................................................... 2

Legal Standards ................................................................................................................... 4

    I.      Rule 12(b)(1) ......................................................................................... 4

    II.     Rule 12(b)(6) ......................................................................................... 5

Argument ............................................................................................................................. 5

    I.      Tilley's Complaint is Moot ................................................................. 5

    II.     Tilley's Claims Are Non-Justiciable Under *Egan* and *Lee* ..................................... 7

    III.    Tilley's Non-Constitutional Claims Are Barred by the CSRA ............................ 11

    IV.    Tilley's Constitutional Claims Are Barred by Sovereign Immunity .................... 14

    V.     Tilley Has No Property Interest In His Security Clearance .................................. 15

    VI.    Tilley's *Ultra Vires* Claims Fail ....................................................................... 16

Conclusion ........................................................................................................................ 20

# TABLE OF AUTHORITIES

Cases                                                                                      Page(s)

*Almaqrami v. Pompeo,*
  933 F.3d 774 (D.C. Cir. 2019) ............................................................... 6

*Am. Butterfly Ass'n v. Wolf,*
  977 F.3d 1244 (D.C. Cir. 2020) ............................................................. 5

*Am. Nat'l Ins. Co. v. FDIC,*
  642 F.3d 1137 (D.C. Cir. 2011) ............................................................. 4

*Am. Sch. of Magnetic Healing v. McAnnulty,*
  187 U.S. 94 (1902) ................................................................................ 17

*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015) .............................................................................. 17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................... 2, 5

*Atherton v. D.C. Off. of the Mayor,*
  567 F.3d 672, 386 U.S. App. D.C. 144 ................................................ 17

*Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.,*
  502 U.S. 32 (1991) ................................................................................ 17

*Bennett v. Chertoff,*
  425 F.3d 999 (D.C. Cir. 2005) ............................................................... 8

*Bush v. Lucas,*
  462 U.S. 367 (1983) .............................................................................. 11

*Cafeteria & Rest. Workers Union, Loc. 473,*
  367 U.S. 886 (1961) .............................................................................. 16

*Chamber of Com. v. Reich,*
  74 F.3d 1322 (D.C. Cir. 1996) ............................................................. 18

*Changji Esquel Textile Co. v. Raimondo,*
  40 F.4th 716 (D.C. Cir. 2022) .............................................................. 20

*Chiang v. Gonzales,*
  Civ. A. No. 05-3273, 2006 WL 8449284 (C.D. Cal. May 9, 2006) ......... 14

*Cofield v. United States*,
    64 F. Supp. 3d 206 (D.D.C. 2014) ................................................................... 15

*Comm'n, v. Texas*,
    605 U.S. 665 (2025) .............................................................................. 17, 19

*Conservation Force, Inc. v. Jewell*,
    733 F.3d 1200 (D.C. Cir. 2013) ....................................................................... 6

*Croddy v. FBI*,
    Civ. A. No. 00-0651 (EGS), 2006 WL 2844261 (D.D.C. Sept. 29, 2006) ............................. 13

*Davis v. Billington*,
    681 F.3d 377 (D.C. Cir. 2012) ...................................................................... 12

*Department of the Navy v. Egan*,
    484 U.S. 518 (1988) ...................................................................... 1, 7, 8, 15

*Doe v. Casey*,
    796 F.2d 1508 (D.C. Cir. 1986) ..................................................................... 16

*Dorfmont v. Brown*,
    913 F.2d 1399 (9th Cir. 1990) ....................................................................... 9

*Eagle Tr. Fund v. U.S. Postal Serv.*,
    365 F. Supp. 3d 57 (D.D.C. 2019) ................................................................... 19

*El-Ganayni v. Dep't of Energy*,
    591 F.3d 176 (3d Cir. 2010) ......................................................................... 9

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012) ................................................................................... 12

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ............................................................................ 14, 15

*Fed. Express Corp. v. Dep't of Commerce*,
    39 F.4th 756 (D.C. Cir. 2022) ...................................................................... 20

*Filebark v. Dep't of Transp.*,
    555 F.3d 1009 (D.C. Cir. 2009) ..................................................................... 12

*Fornaro v. James*,
    416 F.3d 63 (D.D.C. 2005) .......................................................................... 12

*Franken v. Bernhardt*,
    763 F. App'x 678 (10th Cir. 2019) ........................................................ 11

*Graham v. Ashcroft*,
    358 F.3d 931 (D.C. Cir. 2004) ...................................................... 12, 19

*Greene v. McElroy*,
    360 U.S. 474 (1959) ........................................................................ 16

*Gulf Coast Mar. Supply, Inc. v. United States*,
    867 F.3d 123 (D.C. Cir. 2017) ............................................................ 5

*Hall v. Dep't of Labor, Admin. Review Bd.*,
    476 F.3d 847 (10th Cir. 2007) ........................................................... 9

*Hegab v. Long*,
    716 F.3d 790 (4th Cir. 2013) ............................................................ 9

*Hindes v. FDIC*,
    137 F.3d 148 (3d Cir. 1998) ............................................................ 19

*Hinton v. Dist. of Columbia*,
    Civ. A No. 21-1295 (JDB), 2021 WL 4476775 (D.D.C. Sept. 30, 2021) ................ 6

*Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*,
    402 F.3d 1249 (D.C. Cir. 2005) ......................................................... 4

*Kartseva v. Dep't of State*,
    37 F.3d 1524 (D.C. Cir. 1994) .......................................................... 16

*Kirby Corp. v. Peña*,
    109 F.3d 258 (5th Cir. 1997) ........................................................... 19

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
    567 U.S. 298 (2012) ...................................................................... 6

*Kobelia v. FBI*,
    Civ. A. No. 24-2542 (SLS), 2025 WL 1444509 (D.D.C. May 20, 2025) ............ 12, 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ...................................................................... 4

*Lamb v. Holder*,
    82 F. Supp. 3d 416 (D.D.C. 2015) ....................................................... 13

*Larson v. Domestic & Foreign Com. Corp.*,
   337 U.S. 682 (1949) ............................................................................................... 19

*Lee v. Garland*,
   120 F.4th 880 (D.C. Cir. 2024) ........................................................................... 1, 9

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ............................................................................................... 17

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................. 4

*Lundeen v. Mineta*,
   291 F.3d 300 (5th Cir. 2002) ................................................................................ 19

*Molerio v. FBI*,
   749 F.2d 815 (D.C. Cir. 1984) .............................................................................. 16

*National Ass'n of Postal Supervisors v. United States Postal Serv.*,
   26 F.4th 960 (D.C. Cir. 2022) ............................................................................... 19

*Nuclear Regul. Comm'n v. Texas*,
   600 U.S. 665 (2025) ............................................................................................... 17

*Nyunt v. Chairman, Broad. Bd. of Governors*,
   589 F.3d 445 (D.C. Cir. 2009) ........................................................................ 13, 20

*Oryszak v. Sullivan*,
   576 F.3d 522 (D.C. Cir. 2009) ................................................................................ 8

*Palmieri v. United States*,
   896 F.3d 579 (D.C. Cir. 2018) ................................................................................ 9

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ................................................................................................. 19

*Ramos v. Garland*,
   Civ. A. No. 22-1143 (DLF), 2023 U.S. Dist. LEXIS 121862 (D.D.C. July 14, 2023)............. 10

*Runnels v. FBI*,
   Civ. A. No. 25-1202 (BAH), 2025 U.S. Dist. LEXIS 218163 (D.D.C. Nov. 5, 2025) ........... 13

*Ryan v. Reno*,
   168 F.3d 520 (D.C. Cir. 1999) ...................................................................... 8, 9, 10

*Sanchez-Mercedes v. Bureau of Prisons,*
    453 F. Supp. 3d 404 (D.D.C. 2020) ............................................................ 4, 5

*Sloan v. Dep't of Housing & Urban Dev.,*
    236 F.3d 756 (D.C. Cir. 2001) .................................................................. 15

*Stewart v. Evans,*
    275 F.3d 1126 (D.C. Cir. 2002) ................................................................ 11

*Tapp v. Washington Metro. Area Transit Authority,*
    306 F. Supp. 3d 383 (D.D.C. 2016) ........................................................... 15

*Taylor v. Clark,*
    821 F. Supp. 2d 370 (D.D.C. 2011) ............................................................ 4

*Transwestern Pipeline Co. v. FERC,*
    897 F.2d 570 (D.C. Cir. 1990) .................................................................. 6

*United States v. Fausto,*
    484 U.S. 439 (1988) ............................................................................ 12

*Webster v. Doe,*
    486 U.S. 592 (1988) ............................................................................ 16

*Zukerman v. U.S. Postal Serv.,*
    961 F.3d 431 (D.C. Cir. 2020) .................................................................. 6

Statutes

5 U.S.C. §§ 706(2)(A) ............................................................................ 18

Rules

Fed. R. Civ. P. 12(b)(1) ......................................................................... 15
Fed. R. Civ. P. 12(b)(6) ................................................................. 5, 15, 16

Regulations

C.F.R. §§ 17.2(a) ............................................................................... 18

Defendant the Federal Bureau of Investigation ("FBI"), by and through undersigned counsel, respectfully moves pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6) to dismiss Plaintiff Kevin P. Tilley's[1] Complaint ("Compl.", ECF No. 1) for lack of subject-matter jurisdiction and for failure to state a claim.

## INTRODUCTION

Tilley, a former FBI Special Agent, was placed on administrative leave in March 2021 because a complaint was filed against him. Tilley was taken off administrative leave approximately two weeks later, but in June 2021 he was investigated by the Office of Inspector General and local officials. In November 2021, he was placed on paid administrative leave again and later notified that his security clearance was suspended. Tilley was suspended without pay shortly thereafter pending the outcome of the internal reviews and alleged that he remained suspended to this day. Tilley now asserts that the suspension of his security clearance and his indefinite suspension without pay are unlawful. He brings *ultra vires* claims, as well as claims under the Administrative Procedure Act ("APA") and the Fifth Amendment.

As explained further below, this matter is moot because Tilley was formally terminated from the FBI prior to filing this Complaint. And even if it were not moot, each claim fails for lack of subject-matter jurisdiction and failure to state a claim. At the outset, his claims are precluded under *Department of the Navy v. Egan*, 484 U.S. 518, 528 (1988), and *Lee v. Garland*, 120 F.4th 880 (D.C. Cir. 2024). Plaintiff's non-constitutional claims are also precluded by the Civil Service Reform Act ("CSRA"). Additionally, the Court lacks subject-matter jurisdiction over Tilley's Due Process claims because the United States has not waived sovereign immunity for money damages for alleged constitutional violations. And even if the Court has jurisdiction, Tilley fails to plead

---

[1]    Plaintiff Timothy Kobelia filed a voluntary notice of dismissal on November 28, 2025. *See* ECF No. 8. This motion therefore addresses only Tilley's remaining claims.

sufficient facts to state a claim. The FBI respectfully requests that the Court grant this motion and dismiss this case in its entirety.

## BACKGROUND

The following factual assertions, taken from Tilley's complaint, are presumed true for purposes of evaluating the complaint's sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

In July 2018, Tilley became an FBI special agent and was granted a security clearance to access Top Secret classified national security information. Compl. ¶¶ 41-42. Tilley was assigned to the FBI's field office in Seattle, Washington where he was assigned to investigate crimes against children and human trafficking. *Id.* ¶ 44.

On March 14, 2021, Tilley was informed by his management that a complaint was filed against him, and he was placed on paid administrative leave. *Id.* ¶ 48. After two weeks, Tilley was taken off administrative leave and returned to full duty. *Id.* ¶ 49. In June 2021, Tilley was interviewed by investigators from the Office of the Inspector General ("OIG") and local officials. *Id.* ¶ 50. In September, Tilley's legal counsel was informed by the OIG that the investigation was closed, and in October 2021 Tilley was notified that local officials declined to take action against him. *Id*. ¶¶ 51-52. Tilley informed his supervisors and the Special Agent in Charge. *Id.* ¶ 53.

On November 4, 2021, Tilley was again placed on paid administrative leave. *Id.* ¶ 54. On November 19, 2021, Tilley was notified that his security clearance was suspended, and he was ordered to return to the office and return his FBI property. *Id.* ¶ 55. On November 22, 2021, Tilley was notified via letter dated November 17, 2021, that his security clearance was suspended based on the complaint that was investigated by OIG and local officials. *Id.* ¶ 56. He was also informed that the suspension of his security clearance would continue until the FBI completed the investigation, at which time his clearance status would be re-evaluated. *Id.* ¶ 57.

On November 22, 2021, Tilley received a later dated November 18, 2021, which notified him that he was "suspended indefinitely from duty and pay effective upon receipt of this letter." *Id.* ¶ 59. The letter also said that the action was "based upon the decision . . . to suspend your Top Secret security clearance and access to classified information" and that "[i]t has been a longstanding, essential condition of employment that employees of the FBI be able to obtain and maintain a Top Secret security clearance." *Id.* ¶¶ 59-60.

On June 22, 2023, Tilley took a polygraph examination where he denied any allegation of wrongdoing, after which he was notified that he passed the exam. *Id.* ¶ 64. Tilley was informed at some point that an adjudication decision on his security clearance was made, and it "was strongly implied" that the FBI "recommended reinstatement of his security clearance." *Id.* ¶ 65. As of August 2023, the adjudication decision was with the final decision maker. *Id.* In September 2024, "another unit in the FBI determined the allegation of wrongdoing that was the basis for suspending Tilley's security clearance was unsubstantiated." *Id.* ¶ 66. However, Tilley alleges that his security clearance remains suspended. *Id.* ¶ 67. "Although he has taken other work, he has not made the same pay that he would have made as an FBI agent, nor has he been able to get other federal employment" or earn credit towards a federal retirement. *Id.* He has not received the evidence the FBI relied upon to suspend his security clearance or has had a hearing regarding the allegations made against him. *Id.*

Tilley filed his Complaint on June 24, 2025. *See generally id.* He brings five claims. Count I asserts that suspension of Tilley's security clearance was an *ultra vires* violation of the FBI's authority under the Constitution, executive orders, and Code of Federal Regulations ("CFR"). *Id.* ¶¶ 99-117. Claim II asserts a Fifth Amendment Due Process claim for suspension of the security clearance. *Id.* ¶ 118-124. Count III asserts that suspension of Tilley's security clearance was in

violation of the APA. *Id*. ¶ 125-126. Under Count IV, Tilley asserts that his indefinite suspension from duty without pay was an *ultra vires* violation of the FBI's authority under the Constitution and Executive Orders. *Id*. ¶ 127-149. Finally, in Count V, Tilley asserts that his indefinite suspension from duty without pay violated the Fifth Amendment. *Id*. ¶ 150-152.

Tilley asks the Court for a declaration that the FBI violated the Constitution, an injunction requiring the FBI to reinstate him with full back pay and benefits, an injunction requiring the FBI to reinstate his security clearance, an injunction prohibiting the FBI from suspending security clearances of any employee or contractor without procedural protections, an injunction prohibiting the FBI from suspending any employee indefinitely without pay for losing access to classified material, and attorney's fees and costs. *Id*. at 34-35.

## LEGAL STANDARDS

### I.    <u>Rule 12(b)(1)</u>

Established law requires the Court to "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (cleaned up). Federal courts are courts of limited jurisdiction, and the law "presume[s]" that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "To survive a Rule 12(b)(1) motion, a plaintiff must establish the Court's jurisdiction over his claims." *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020). "The Court must 'assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Id*. (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). The court may consider materials outside the pleadings in determining whether it has jurisdiction. *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). "If the Court determines that it lacks jurisdiction

as to any claim, it must dismiss that claim." *Sanchez-Mercedes*, 453 F. Supp. 3d at 414. A "dismissal for want of subject-matter jurisdiction can only be without prejudice[.]" *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020).

## II.    Rule 12(b)(6)

A complaint must be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). The Court must "take as true all well-pled factual allegations within [a plaintiff's] complaint" while also "disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017).

## ARGUMENT

## I.    Tilley's Complaint is Moot

As a threshold matter, this matter is moot. In his Complaint, filed June 26, 2025, Tilley asserted that "[d]espite his clearance suspension decision being with the final decisionmaker since August 2023, and another FBI unit determining the allegation of wrongdoing that was the basis for his suspension was unsubstantiated, no decision has been made, and his clearance remains suspended. Consequently, Tilley has been suspended indefinitely without pay from the FBI for more than three years with no deadline." Compl. ¶ 67. Tilley further complains that his suspension "from employment indefinitely without pay from November 21, 2021, through the present" was an *ultra vires* violation of Article II of the U.S. Constitution, Executive Order No. 12,968, Executive Order No. 13,526, the C.F.R., the FBI Employment Agreement, and violated his Fifth Amendment Rights. *Id.* ¶¶ 149, 152. Despite his representations, Tilley is no longer an FBI employee. *See* Standard Form 50 (SF-50), *Notification of Personnel Action* (Tilley, Kevin Patrick)

(Effective Date March 15, 2025). He was removed effective March 15, 2025, more than three months prior to filing this Complaint. *Id.*

Federal courts lack subject matter jurisdiction to hear claims that are moot. *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013). A case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990). "A lawsuit becomes moot . . . 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020) (quoting *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019)). A case therefore must be dismissed as moot "when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)); *accord, e.g., Hinton v. Dist. of Columbia*, Civ. A No. 21-1295 (JDB), 2021 WL 4476775, at *5 (D.D.C. Sept. 30, 2021) ("[I]f events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." (citation omitted)).

The crux of Tilley's Complaint is that his security clearance was suspended and he was placed on indefinite leave without pay, leaving him in a state of limbo. He alleges that he is suspended from his employment without pay "through the present." *Id.* ¶¶ 149, 152. Assuming Tilley meant "the present" being when he filed his Complaint on June 24, 2025, Tilley is incorrect. Tilley was no longer suspended from the FBI for more than three months prior to his filing of this matter. Indeed, Tilley was removed from the FBI on March 15, 2025. *See* Ex. 1. It is unclear how the Court could grant Tilley the relief he seeks. Tilley seeks reinstatement of his security clearance and in turn, for him to no longer be suspended. Compl. ¶¶ 154, 156. But Tilley is no longer

suspended such that he hangs in the "limbo" he chiefly complains about in his Complaint. He has not been "suspended indefinitely without pay from the FBI for more than three years with no deadline." *Id.* ¶ 67. The "deadline" happened more than three months prior to filing this Complaint, and accordingly this matter is moot.

## II.    <u>Tilley's Claims Are Non-Justiciable Under *Egan* and *Lee*</u>

Even if this matter was not moot, Tilley's Complaint should still be dismissed because his claims are barred by *Egan* and *Lee*. As alleged in the Complaint, Tilley's security clearance was suspended, and the FBI placed him on indefinite suspension without pay because he did not have an active security clearance, which was a condition of continued employment. Compl. ¶¶ 58-59. Tilley's claims regarding the suspension of his clearance and those stemming from the suspension of his clearance should be dismissed because established precedent precludes judicial review.

Start with Tilley's complaints about the suspension of his security clearance, Counts I through III. Compl. ¶¶ 119-224. *Egan* held that the Merit Systems Protection Board lacks the authority "to review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action." *Egan*, 484 U.S. at 520. Citing Article II, Section 2 of the Constitution, which makes the President the "Commander in Chief of the Army and Navy of the United States," the Supreme Court explained that the President's

> authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant.

*Id.* at 527. "It should be obvious," the Court continued, "that no one has a 'right' to a security clearance." *Id.* at 528. The Court concluded that "the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." *Id.* at 529. The Court reasoned that "it is not reasonably

possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk." *Id.*

Applying *Egan*, the D.C. Circuit has repeatedly held that federal courts may not adjudicate claims that would require a factfinder to second-guess the merits of an Executive Branch agency's denial of a security clearance or similar decisions. For example, in *Ryan v. Reno*, 168 F.3d 520 (D.C. Cir. 1999), the D.C. Circuit held that *Egan* precluded Title VII claims challenging a decision by the Immigration and Naturalization Service refusing to waive background checks for foreign nationals applying for employment because "the waiver denials were tantamount to clearance denials and were based on the same sort of 'predictive judgment' that *Egan* tells us 'must be made by those with the necessary expertise in protecting classified information,' without interference from the courts." *Id.* at 524 (quoting *Egan*, 484 U.S. at 529).

Likewise, in *Bennett v. Chertoff*, 425 F.3d 999 (D.C. Cir. 2005), the D.C. Circuit held that "employment actions based on denial of security clearance are not subject to judicial review, including under Title VII." *Id.* at 1001. In recognition of the need to give the Executive Branch meaningful latitude to safeguard sensitive information, the court has held that *Egan* precludes review of not only the formal denial or revocation of a security clearance, but also any related claim that would require a "trier of fact . . . to consider the merits of" a security determination. *Id.* at 1000.

Particularly relevant in this matter, the D.C. Circuit has also held that *Egan* forecloses claims outside of the Title VII context. For example, in *Oryszak v. Sullivan*, 576 F.3d 522 (D.C.

Cir. 2009), the D.C. Circuit affirmed the dismissal of a claim brought by a Secret Service employee challenging the revocation of her security clearance under the APA.

Finally, the D.C. Circuit recently held that *Egan* precludes judicial review of constitutional claims challenging the denial or revocation of a security clearance "because the Constitution commits that decision to the Executive." *Lee*, 120 F.4th at 891. Having previously reserved the question whether *Egan* bars review of constitutional claims in several prior cases, *see, e.g.*, *Ryan*, 163 F.3d at 524; *Palmieri v. United States*, 896 F.3d 579, 590 (D.C. Cir. 2018), the Court undertook a comprehensive analysis of this issue and grounded its conclusion that plaintiff's claims were non-justiciable in the political-question doctrine. *Lee*, 120 F.4th at 887-895. The court held that the plaintiff's constitutional claims, including due-process claims, were "not justiciable"; because they "squarely target[ed] the [security-clearance] revocation decision itself, they [we]re textually committed to the Executive Branch." *Id.* at 894. Moreover, the plaintiff's due-process claim would require a court to assess "whether Executive Branch officials had good enough reasons to revoke [the plaintiff's] clearance," and "there are no judicially manageable standards for resolving" such a claim. *Id.*

Other courts of appeals have likewise held that *Egan* precludes review of constitutional claims challenging security clearance decisions on due process and other grounds. *See, e.g.*, *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990) (holding that *Egan* bars due process claims that were essentially "attacks on the merits" of the revocation decision). As the Fourth Circuit summarized, "conclusory constitutional claims" cannot "circumvent the undisputed proposition that we will not review the merits of a security clearance decision." *Hegab v. Long*, 716 F.3d 790, 795 (4th Cir. 2013); *see also El-Ganayni v. Dep't of Energy*, 591 F.3d 176, 185 (3d Cir. 2010) (holding that *Egan* bars First Amendment retaliation claims); *Hall v. Dep't of Labor,*

*Admin. Review Bd.*, 476 F.3d 847, 852-53 (10th Cir. 2007) (retaliation claim). Collectively, these and other decisions confirm the longstanding and fundamental principle that courts may not review claims challenging security clearance decisions because such review would inevitably require judicial second-guessing of predictive judgments by Executive Branch agencies charged with safeguarding classified information regarding the nature and scope of security risks and the kind of evidence and process appropriate to make such determinations.

Tilley's claims squarely challenge the suspension of his security clearance. The expansive relief requested in the Complaint illustrates this point. To remedy the violations alleged in this case, Plaintiff requests, among other things, reinstatement of his security clearance, reinstatement of employment, back pay and benefits, and declarations that the FBI violated his rights. Compl. at 34. This prayer for relief is completely at odds with *Egan*, *Ryan*, *Lee*, and numerous other precedents, because it would be impossible for a court to determine whether Tilley is entitled to such relief without reviewing the merits of the FBI's decision to suspend Plaintiff's clearance. And granting the relief requested would require overriding the Executive Branch's determination that it is not in the interest of national security to grant plaintiff access to classified materials. In short, no matter how much Tilley may protest that he is not asking a court to second-guess the merits of the decision to revoke his security clearance, his claims would inevitably require just that. *See Ryan*, 168 F.3d at 523-24 (explaining that a court could not "determine the merits of" Title VII claims *"without running smack up against *Egan*"*). Moreover, even those counts that are not styled as a direct attack on the security clearance suspension are barred because Plaintiff's suspension from employment was predicated on the suspension of his security clearance. *See Ramos v. Garland*, Civ. A. No. 22-1143 (DLF), 2023 U.S. Dist. LEXIS 121862, at *16 (D.D.C. July 14, 2023) (declining to dismiss claims under *Egan* because "there is no suggestion in the amended

10

complaint that [plaintiff's] 60-day suspension *from employment* was predicated on a suspension of her security clearance.") (emphasis in original).

Accordingly, because the suspension of Tilley's security clearance and the indefinite suspension flowing from the suspension of his security clearance are barred under *Egan*, the Court should dismiss the Complaint in its entirety.

## III.    Tilley's Non-Constitutional Claims Are Barred by the CSRA

Much of Tilley's Complaint (*i.e.*, his non-constitutional claims) should also be dismissed because his claims are precluded by the Civil Service Reform Act ("CSRA"). In Counts I and IV, he asserts that the FBI committed an *ultra vires* violation by suspending his security clearance and suspending him from duty indefinitely without pay, and in Count III he asserts that the FBI violated the APA by suspending his security clearance. *See generally* Compl. He seeks an order reinstating his employment with full back pay and benefits, the reinstatement of his security clearance, and injunctions preventing the FBI from suspending security clearances or employees indefinitely "without procedural protections." Compl. at 34-35. None of these claims are properly before this court, and because Plaintiff's claims are administratively channeled under the CSRA, Counts I, III, and IV can be dismissed under Rule 12(b)(1).

The CSRA preempts claims that "arise out of an employment relationship" between the federal government and its employees. *See Stewart v. Evans*, 275 F.3d 1126, 1129-30 (D.C. Cir. 2002) (quoting *Bush v. Lucas*, 462 U.S. 367, 368 (1983)); *see also Franken v. Bernhardt*, 763 F. App'x 678, 681 (10th Cir. 2019) ("[T]he CSRA preempts claims arising directly out of a federal employment relationship even where the plaintiff has no remedy under the CSRA."). Plaintiff's claims indisputably arise from his employment relationship with the FBI and are thus precluded.

The CSRA is "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of

sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445 (1988). It addresses virtually every aspect of federal employment and "prescribes in great detail the protections and remedies applicable" to federal employees. *Id.* at 443. The statute provides remedial schemes for different types of grievances. For instance, Chapter 23 of the CSRA applies to "prohibited personnel practices" and Chapter 75 covers "major adverse actions." *Davis v. Billington*, 681 F.3d 377, 385 (D.C. Cir. 2012). Given the highly detailed scheme set forth in the CSRA, it generally provides the exclusive means of addressing federal employment disputes. *See Fornaro v. James*, 416 F.3d 63, 67 (D.D.C. 2005) (Roberts, J.) ("so far as review of determinations under the CSRA is concerned, what you get under the CSRA is what you get.").

The statutory scheme not only preempts but also "entirely foreclose[s] judicial review to employees to whom the CSRA denies statutory review." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012); *see also Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004) (Roberts, J.) (noting that "[f]or the sort of action at issue . . . the CSRA provides no relief and precludes other avenues of relief"). That includes FBI employees who—apart from those that are preference eligible—are excluded from the CSRA. *Graham*, 358 F.3d at 933. Plaintiff does not fit into this limited exception given that he is "not a preference-eligible veteran." Compl. ¶ 41. Although Plaintiff may not like it, "the CSRA does not always provide employees with a forum for review." *Kobelia v. FBI*, Civ. A. No. 24-2542 (SLS), 2025 WL 1444509, at *16 (D.D.C. May 20, 2025).

Plaintiff consequently cannot seek refuge in the APA to litigate his statutory claim. The D.C. Circuit has "long held that federal employees may not use the Administrative Procedure Act to challenge agency employment actions." *Filebark v. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009) ("[W]e have held that [the CSRA] preempts judicial review under the more general APA even when that scheme provides no judicial relief . . . .").

At bottom, Plaintiff's APA and *ultra vires* claims are complaints about the suspension of his security clearance and suspension from duty without pay. While Plaintiff may be discontent with his current situation, he ultimately seeks relief that should be channeled through the CSRA.

It is immaterial that Plaintiff seeks an injunction that would broadly prohibit "the FBI from suspending security clearances of any employee or contractor for eligibility reasons without the procedural protections mandated by Executive Order No. 12,968 and the C.F.R." *See* Compl. ¶ 157. The CSRA's preclusion of APA claims "applies to a 'systemwide challenge' to an agency policy . . . just as it does to the implementation of such a policy in a particular case." *See Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448–49 (D.C. Cir. 2009) (Kavanagh, J.) (citation omitted).

In sum, both the Supreme Court and the D.C. Circuit have long held that the CSRA's comprehensive scheme for administrative and judicial review of employment-related claims precludes district court jurisdiction over most claims, even if FBI employees generally cannot avail themselves of the CSRA's procedures. *See Runnels v. FBI*, Civ. A. No. 25-1202 (BAH), 2025 U.S. Dist. LEXIS 218163, at *12 (D.D.C. Nov. 5, 2025) ("Suspensions are quintessential personnel actions explicitly covered under the CSRA."); *Kobelia*, 2025 WL 1444509, at *16 dismissing claims brought by FBI agents challenging restrictions on outside employment, *inter alia*, because the "claims are precluded by the CSRA" even if the plaintiff "cannot prevail in a claim under the CSRA"); *Lamb v. Holder*, 82 F. Supp. 3d 416, 422 (D.D.C. 2015) (noting that "[w]hile decisions concerning 'pay, benefits, or awards' are generally within the scope of the CSRA, . . . such decisions taken at the FBI, however, are not," and thus the plaintiff's challenges to his termination "fall within the umbrella of the CSRA, which provides him no avenue for judicial review"); *Croddy v. FBI*, Civ. A. No. 00-0651 (EGS), 2006 WL 2844261, at *5 (D.D.C. Sept. 29, 2006)

("the fact that the FBI is generally exempted from the CSRA's scheme does not diminish the scope of the CSRA's preclusive effect"); *Chiang v. Gonzales*, Civ. A. No. 05-3273, 2006 WL 8449284, at *7 (C.D. Cal. May 9, 2006), aff'd sub nom. *Chiang v. FBI*, 278 F. App'x 728 (9th Cir. 2008) ("Because [plaintiff's] claims [challenging the suspension of her security clearance and placement on administrative leave] concern personnel actions by the FBI, they fall within the ambit of the CSRA, and the court may not review them unless the CSRA authorizes review. As an FBI agent, [plaintiff] is excluded from the CSRA. . . . Consequently, her claims cannot be reviewed by this court."). There is nothing novel about Plaintiff's claims that would suggest otherwise here. The CSRA therefore forecloses judicial review of Plaintiff's non-constitutional claims, and the Court should grant dismissal for lack of jurisdiction.

## IV.    Tilley's Constitutional Claims Are Barred by Sovereign Immunity

In Count II, Tilley asserts that he had a "protected property interest" in his security clearance and the FBI violated his Due Process rights by suspending the clearance "without proper notice and without a meaningful opportunity to respond." Compl. ¶¶ 122-23. In Count V, Tilley asserts that he had a "protected property interest" in his continued employment with the FBI after completing his probationary period and the FBI violated his Due Process rights by suspending him from employment indefinitely without pay "without proper notice and without a meaningful opportunity to respond." Compl. ¶¶ 151-52.

Sovereign immunity bars Tilley's Due Process claims to the extent he seeks money damages. *Id.* at 34 (seeking relief in the form of "[a]n injunction requiring Defendant FBI to reinstate Tilley's employment investigating Crimes Against Children/Human Trafficking, or other criminal matters that do not require access to classified material, with full back pay and benefits.). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity is "jurisdictional in nature." *Id.*

The United States has waived sovereign immunity for certain damages claims. *Sloan v. Dep't of Housing & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001) (citing 28 U.S.C. §§ 1346(b), 2674). "However, the United States has not consented to be sued for damages based . . . on constitutional violations." *Cofield v. United States*, 64 F. Supp. 3d 206, 213 (D.D.C. 2014) (citing *Meyer*, 510 U.S. at 476–78). "Consequently, it is clear beyond cavil that the FTCA's waiver does not apply with respect to [Tilley's] claim[], and sovereign immunity bars any claim for money damages against the United States and its agencies." *Id.* at 213-14. The Court should dismiss Counts II and V for lack of subject-matter jurisdiction because the United States has not waived sovereign immunity for damages claims arising out of constitutional claims. *See* Fed. R. Civ. P. 12(b)(1).

## V.    **Tilley Has No Property Interest In His Security Clearance**

Even if the claim were justiciable, Count II alleging a violation of Tilley's Fifth Amendment rights for suspending his security clearance fails to state a claim upon which relief can be granted because Tilley does not have a property or liberty interest in a security clearance. "In order to establish a Fifth Amendment due process violation, a plaintiff must demonstrate (1) that he was deprived of protected property or liberty interests; and (2) that, in effecting that deprivation, the defendant did not afford him the procedural safeguards guaranteed by the Constitution." *Tapp v. Washington Metro. Area Transit Authority*, 306 F. Supp. 3d 383, 392 (D.D.C. 2016) (citation modified). Tilley has not identified a protected property or liberty interest.

As stated above, "[it]t should be obvious that no one has a 'right' to a security clearance." *Egan*, 484 U.S. at 528. Federal employees simply do not have a property interest in a security clearance. *See Doe v. Cheney*, 885 F.2d 898, 909–10 (D.C. Cir. 1989). Not having plead facts in support of a cognizable property interest, Count II should be dismissed for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

Plaintiff has also not pled that he has a liberty interest. The D.C. Circuit has held that a liberty interest is implicated where government action changes a plaintiff's status, including by excluding him from "employment opportunities" or precluding him from pursuing his "chosen career." *Kartseva v. Dep't of State*, 37 F.3d 1524, 1527-28 (D.C. Cir. 1994); *see also Greene v. McElroy*, 360 U.S. 474, 492 (1959) (revocation of a security clearance possibly implicates Fifth Amendment liberty interest where action "has seriously affected, if not destroyed, [plaintiff's] ability to obtain employment in the aeronautics field"). To show a deprivation of this type of liberty interest, a plaintiff must show the government "both altered his status and stigmatized his reputation." *Doe v. Cheney*, 885 F.2d 898, 910 (D.C. Cir. 1989); *Doe v. Casey*, 796 F.2d 1508, 1523 (D.C. Cir. 1986) (change in status includes "foreclosing the employee's future employment opportunities"), *aff'd in part, rev'd in part sub nom. Webster v. Doe*, 486 U.S. 592 (1988).

Plaintiff has not pled sufficient facts to establish a *Kartseva* claim or a reputation-plus or stigma-plus claim. His Complaint alleges nothing at all about his reputation or that he is excluded from his chosen career. And suspension of a security clearance does not itself show reputational harm. *See Cafeteria & Rest. Workers Union, Loc. 473*, 367 U.S. 886, 898 (1961) (observing that revocation of an identification badge for failure to meet security requirements does not "bestow a badge of disloyalty or infamy"); *Molerio v. FBI*, 749 F.2d 815, 824 (D.C. Cir. 1984) (observing that being "denied [clearance] on unspecified grounds in no way implies disloyalty or any other repugnant characteristic"). Accordingly, not having plead facts in support of a cognizable liberty interest, Count II should be dismissed for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## VI.    **Tilley's *Ultra Vires* Claims Fail**

Count I is styled as "Suspension of the Plaintiffs' Security Clearances Was an Ultra Vires Violation of the FBI's Authority Under the Constitution, Executive Orders, and C.F.R." Compl. at 24-28. Count VI is styled as "Indefinite Suspension of the Plaintiffs from Duty Without Pay

Was Ultra Vires Violation of the FBI'S Authority Under the U.S. Constitution and Executive Orders." *Id.* at 30-33. These claims should be dismissed for the reasons explained above, under *Egan*, *Lee*, and the CSRA.

Separately from that, Plaintiff's scattershot briefing raises serious questions under Rule 12(b)(6). *See Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681, 386 U.S. App. D.C. 144 (D.C. Cir. 2009 ("A complaint must give the defendants notice of the claims and the grounds upon which they rest[.]").

Even if the counts do satisfy Rule 12, as the Supreme Court has explained, an *ultra vires* challenge is "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nuclear Regul. Comm'n, v. Texas*, 605 U.S. 665, 681-682 (2025). Courts have recognized that an equitable cause of action for *ultra vires* review may be available in rare instances where, because Congress has failed to provide a cause of action, "the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law, and is in violation of the rights of the individual." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); *see also Leedom v. Kyne*, 358 U.S. 184, 189 (1958). However, the Supreme Court has expressly held that an *ultra vires* cause of action is not available whenever there is another "meaningful and adequate opportunity for judicial review," or "clear and convincing evidence that Congress intended to deny … District Court jurisdiction." *Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43-44 (1991); *see also Nuclear Regul. Comm'n v. Texas*, 600 U.S. 665, 681 (2025); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327-28 (2015).

*Ultra vires* review is unavailable here. First, Plaintiff cannot pursue his Count I *ultra vires* claim because it parrots his APA claim. Indeed, Plaintiff contends that "[b]ecause the Plaintiffs

were provided none of the procedural protections required under Executive Order No. 12,968 and the C.F.R., there is no provision in the Executive Order or C.F.R. to 'suspend' a clearance, and the FBI Employment Agreement incorporates Executive Order No. 12,968 and makes it 'controlling,' the November 18, 2021, decision by the FBI to suspend Tilley's clearance to access classified information . . . without procedural protections was an *ultra vires* action in violation of Article II of the U.S. Constitution, Executive Order No. 12,968, 28 C.F.R. §§ 17.2(a), 17.11(c), 17.47, and the FBI Employment Agreement." Compl. ¶ 117; *see also id.* ¶ 126 ("Considering the procedural protections provided by Executive Order No. 12,968 and the C.F.R., and Executive Order No. 12,968's incorporation into the FBI Employment Agreement, the November 18, 2021, decision to suspend Tilley's clearance to access classified information . . . without the procedural protections for eligibility mandated by Executive Order No. 12,968 and the C.F.R. was arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; and without observance of procedure required by law in violation of 5 U.S.C. §§ 706(2)(A), (B), and (D)."

However, when a plaintiff invokes both the APA and *ultra vires* causes of action, a court should first consider the plaintiff's APA claim. *See Chamber of Com. v. Reich*, 74 F.3d 1322, 1326-27 (D.C. Cir. 1996). Because Plaintiff's APA claim is in essence identical to his *ultra vires* claim, consideration of his *ultra vires* claims should be avoided.

Additionally, although Tilley throws the whole kitchen sink in his *ultra vires* claims (Article II of the U.S. Constitution, Executive Order No. 12,968, 28 C.F.R. §§ 17.2(a), 17.11(c), 17.47, and the FBI Employment Agreement for Count I and Article II of the U.S. Constitution, Executive Order No. 12,968, Executive Order No. 13,526, the C.F.R., and the FBI Employment Agreement for Count IV), they are nothing more than repackaged claims that the FBI has violated

its statutory obligations. Because Counts I and IV are essentially claims that the FBI has violated statutory, regulatory, or internal directives, they are thus precluded under the CSRA. *See Graham*, 358 F.3d at 935 (holding that the CSRA precludes judicial review of claims that the FBI violated its own regulations in taking personnel actions against a plaintiff).

Even if *ultra vires* review were available, Plaintiff's claims would still fail. Judicial review for *ultra vires* agency action "rests on the longstanding principle that if an agency action is unauthorized by the statute under which the agency assumes to act, the agency has violated the law and the courts generally have jurisdiction to grant relief." *National Ass'n of Postal Supervisors v. United States Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022) (cleaned up). To prevail on such a claim, a plaintiff must establish that a government official "acted in a blatantly lawless manner or contrary to a clear statutory prohibition." *Hindes v. FDIC*, 137 F.3d 148, 164 (3d Cir. 1998); *see Nuclear Regul. Comm'n*, 605 U.S. at 681 (holding that nonstatutory review is available when the agency order at issue "was an attempted exercise of power that had been specifically withheld, and the agency's order violated a specific prohibition in the Act") (quotations omitted). Mere allegations of constitutional error do not establish *ultra vires* action. *See Eagle Tr. Fund v. U.S. Postal Serv.*, 365 F. Supp. 3d 57, 68 n.6 (D.D.C. 2019) (Jackson, J.), *aff'd*, 811 F. App'x 669, 670 (D.C. Cir. 2020) ("[A] constitutional claim is separate from an *ultra vires* claim."). Nor do claims that "simply involve a dispute over statutory interpretation." *Lundeen v. Mineta*, 291 F.3d 300, 312 (5th Cir. 2002) (quoting *Kirby Corp. v. Peña*, 109 F.3d 258, 269 (5th Cir. 1997). Rather, an officer may be said to act *ultra vires* "only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949) (to prevail, a plaintiff must allege that official is "not doing the business which the sovereign has empowered him to do"). This is a "very

stringent standard," rendering *ultra vires* claims "essentially a Hail Mary pass." *Nyunt*, 589 F.3d at 449. A plaintiff must show that (1) judicial review is not expressly foreclosed; (2) the agency made an extreme legal error, *i.e.*, plainly acted in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory; and (3) there is no alternative means for the plaintiff to seek judicial review. *See, e.g.*, *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 721-722 (D.C. Cir. 2022).

As explained above, judicial review is foreclosed by the CSRA, *Lee*, and *Egan*. So Plaintiff cannot assert standalone *ultra vires* claims. And in any event, Plaintiff has certainly not met the second requirement, which is "especially demanding." *Changji*, 40 F.4th at 722. "Only error that is patently a misconstruction of the Act, that disregards a specific and unambiguous statutory directive, or that violates some specific command of a statute will support relief." *Fed. Express Corp. v. Dep't of Commerce*, 39 F.4th 756, 764 (D.C. Cir. 2022). Plaintiff has not alleged that the FBI made a legal error—let alone "plainly act[ed] . . . contrary to a specific prohibition in the statute that is clear and mandatory." *Changji*, 40 F.4th at 722. Tilley certainly does not allege the sort of extreme violation necessary to state an *ultra vires* claim and accordingly Counts I and IV should be dismissed.

## CONCLUSION

For these reasons, the FBI respectfully requests that the Court grant this motion and dismiss the Complaint.

Dated: March 2, 2026                      Respectfully submitted,

                                          JEANINE FERRIS PIRRO
                                          United States Attorney

                                          By: _____/s/ *Kaitlin K. Eckrote*_____
                                              KAITLIN K. ECKROTE, D.C. Bar # 1670899
                                              Assistant United States Attorney
                                              601 D Street, NW
                                              Washington, DC 20530
                                              (202) 252-2485

                                          *Attorneys for the United States of America*